Good afternoon, your honors. Anthony Casso for the Pasadena Republican Club. What we have here is the question of state action, and it's in the context of what is very clearly a joint venture. Western Justice Center had an intent. The city of Pasadena had an intent. Neither one of them could accomplish their person, their purpose, without the Western Justice Center. The Western Justice Center wanted to open a facility on this property that was owned by the federal government. They did not qualify as an entity eligible to purchase. They went to the city of Pasadena. The city of Pasadena could only purchase it for a public purpose, which is outlined in the terms of the lease. It's the public purpose of dispute resolution and bringing in all of these other entities into the city to work on the betterment of the administration of justice. The city of Pasadena would not have done this without the city, without the Western Justice Center's participation. Western Justice Center committed to fund the purchase price. However, the city was the one that took out the loan with the federal government and eventually paid off that loan and later sold bonds to finance the refurbishment of the building. That shows that the city's desire to have this project succeed is that the city put the taxpayers at risk, even though it said that it did not want to put the general fund at risk for this. So this is clearly a true joint participation, a joint project. If it's that joint from the get-go, is it your position that everything the Western Justice Center does is a federal case? Yes, they stand in the city, in the shoes of the city of Pasadena, Your Honor. It's not necessarily a federal case. It has to violate some provision of federal law, but they are a state actor for purposes of federal law. So you're saying just across the board, not just with respect to this event, your position is that across the board they are a state actor? I'm trying to recall that, I mean, if you look at the Burton case, Burton was specifically focused on the action of discrimination. So, I mean, obviously the... That's the reason I'm anyway, known to the city. So that's why I'm asking you, whether you're just taking this sweeping view that no matter what happens, whether the city has any knowledge or any participation in a particular decision, they're still all state actors. Well, and similarly in Burton, Your Honor, there's no indication that the parking authority had any knowledge of the business practices of the Eagle Cafe, where the court found fault with the parking authority is that they failed to include a non-discrimination clause. They didn't do that in their lease, and therefore the Supreme Court held that they were jointly liable with the Eagle Cafe. So that's the court's ruling in that case. It doesn't matter that the city did not know in this case. What matters is that the city did not outlaw discrimination in its leasing agreement with the Western Justice Center. They gave them a complete part launch. Mr. Casso, don't you see some stark differences between the landlord-tenant relationship in Burton and the landlord-tenant relationship here? In Burton, it was... The tenant was paying $28,700 a year, which was a lot of money back then. And in a particular place where they were, and that was money that was going into the city. In Burton, the city was paying for what we might call a net lease of insurance, repair, maintenance, and all that was done by the city. Here, just the opposite is the fact. I mean, here, the Western Justice Center has paid off the whole amount of the loan that had been made by the city. The Western Justice Center is paying $1 a month in rent. And these activities have to do with after-business hours. So isn't that quite different when you do, in fact, a comparison with Burton, which makes the Burton principle of joint participation not applicable to this case? Not at all, Your Honor. To hold that had the Eagle Cafe front-loaded its rent, paid an amount in the beginning and then a minimal amount further on, that that would absolve the parking authority of the joint participation in the discrimination. That's the ruling of the court. In here, the purchase price was, I think, $458,000. There was several hundred thousand dollars in refurbishment that was forwarded by the city of Pasadena. It was later paid off by the Western Justice Center. So here we have, instead of, whereas the Eagle Cafe was just one small component for paying the operating costs of this garage, the Western Justice Center was 100 percent required, their participation 100 percent required for the purchase and refurbishment of this property. So if anything, there is a greater showing of joint participation in this case than there was in the Burton case. But that was decades ago, right? The initial purchase, yeah. So if the Eagle front-loaded paid a lump sum amount at the and had no further financial obligation, there's nothing in Burton that would show that that would have changed the result. Because it's the same thing. But haven't courts since Burton held that Burton's holding is limited to its unique facts, where there's this continuing symbiotic relationship between a private entity and the state or its agency? So where's the continuing symbiosis here? The continuing symbiosis is that the Western Justice Center continues to operate on the property of the city of Pasadena. It's a very long-term lease, almost 100 years. However, at the end of the lease, the city receives back this historic structure, which was one of their goals. It's an appreciating asset that's being taken care of by the Western Justice Center. So yeah, there is a continuing relationship. And most recently, this court in Rawson just held that as long as it's a lease of property, that's the factor that they're concerned with. Except that our court also held in Vincent, which has never been overruled, that the financial contribution must be indispensable to the financial success of the governmental agency for the Burton principle to apply. And that clearly is not the case here. So, Your Honor, what we need to do is to harmonize the Vincent case with Rawson and with Geneva Towers, which have noted that it was on a project-by-project basis. So if we look at the Vincent case, obviously Trend West was not operating the Air Force Base. They were doing maintenance. And so there's no specific project involved, as there was with Burton and the parking garage. And so we're in Geneva Towers with this particular building, the particular low-income apartment housing. In order to make all of those cases work together, which is, Judge Graber, you noted that one panel can't overrule another panel, so we have to find a way to harmonize all three cases. Well, in Vincent, you weren't dealing with a particular project, as you were in Geneva Towers and as you were in Rawson. Because in Rawson, they didn't hold, it had to have been indispensable to the entire city or to the entire governmental entity. That just wouldn't make any sense. But because in Vincent, you didn't have a particular project that they were focused on, they could certainly make that or Rawson not be in conflict with Vincent. So looking at these cases, what the cases of this court and the Supreme Court require is that it's a fact-bound inquiry, obviously, as Judge Baya noted. We have to look at the facts of each case and see how they show that the two entities actually work together. Um, what's important under Rawson is that it says that Burton remains good law, which was sort of the the keystone of the Western Justice Center's argument, is that Burton's an old case and therefore we can ignore it. So looking at the cases, if you do the fact-bound inquiry, you do the careful sifting of the facts, what you will see is that this project would not have gone forward if it weren't for the fact that both parties really wanted it to happen. They both had to contribute to it. And it's an ongoing relationship with the Western Justice Center being put in the position as the manager of city-owned property. And in that role, they have the obligation, the same way that the after-office hours, to conform the conduct of the Constitution. They stand in the shoes of the city as a manager of city property. And if there are no more questions, I will reserve the remainder of my time for rebuttal, Your Honor. You may do that. And I believe the other counsel, we have separate times shown for each of you, so you don't use each other's time. We'll hear first from Mr. Thompson. Good afternoon, Your Honors. William Thompson on behalf of defendants and appellees, the Western Justice Center and Judith Cherland. May it please the Court. The Supreme Court and this Court have repeatedly made plain that even extensive governmental funding and regulation of a private entity, which are absent here, are insufficient to establish governmental action for purposes of suit under Section 1983. Now, the club argues at length about public purpose, but the Supreme Court has held that, quote, a private entity performs a function which serves the public, does not make its acts from 1982. We've held that the question is whether the function performed has been, quote, traditionally the exclusive prerogative of the state. That principle has been reaffirmed over and over again by the United States Supreme Court and by the Ninth Circuit. And there's no question here that the Justice Center was not performing a, quote, traditional and exclusive prerogative of the state. Now, of course, the city sought to promote a public purpose when it leased the property to the Justice Center, but that's almost always the case, almost by definition, when there's a municipal contract, and it's in no way dispositive. Although the club attempts to attach some special significance to it here, the law has sharply circumscribed the sorts of public functions that constitute state action under this test. It's a very short list. Nothing here even comes remotely close. For this reason, the club argued below and argued on appeal almost exclusively under the Burton Symbiotic Relationship Test, but the Supreme Court and this court have repeatedly underscored that, quote, there can be no symbiotic relationship under Burton, under Section 1983, when there's, quote, no showing that the government profited from the defendant's alleged constitutional violations. It doesn't even matter whether it's the project or the entity, as your Honor Judge Grable indicated in the case, because the test is even narrower. It's, is there a financial indispensable attribute flowing from the alleged unconstitutional act? And of course, we have to remember, this is Section 1983, which is concerned with acts which themselves are undertaken allegedly under color of state law. It's the acts that are allegedly unconstitutional which have to be the focus. Long relationship of landlord-lessee between the City of Pasadena and the Western Justice Center simply can't be viewed as dispositive. And again, this is a principle that's been repeatedly affirmed by both this court and the U.S. Supreme Court. The Ninth Circuit in the Morse case, which is a case involving the Head Start program, the Gorenk case holds the same. So does Vincent. In fact, three months ago in the Belgao versus Inslee case, the court held the same thing that, quote, there can be a symbiotic relationship only if, quote, the government in a meaningful way accepts benefits derived from the allegedly unconstitutional act. Suppose the City of Pasadena were to say, very frankly, we would agree with the Western Justice Center. There's nothing worse for the political climate of our city than to let John Eastman talk. Your Honor, that would be, I'm sorry, I don't want to step over your question. That would be a completely, a radically different case than what we have on the facts here. There's no indication that. As long as they keep quiet, as long as they keep quiet about the politically correct actions of the Western Justice Center in stopping Mr. Eastman from talking, that's all right. Well, Your Honor, if there were any facts alleged in the complaint that suggested, even remotely, that there was a surreptitious city policy that the events in question were intended to and did carry out, that would be one thing. There's nothing here. And, you know, it's true that at the formation of the center, there was a significant relationship with the city in acquiring the property, which, as the club acknowledges, has long since been paid back. The club, the center, rather, pays the city a dollar a month in rental fees. There's no allegation that the city had anything to do with the events in question, that it has any control or oversight over the after-hour rentals of the Maxwell House. Certainly, there's no suggestion that the city financially profited, much less in an indispensable way, from the cancellation of the Dr. Eastman event. All of those things are under the Burton test. And the attempt of the club to shift the focus to, well, the city didn't prohibit the center from doing this, well, it's very clear that, you know, that, quote, actions taken by private entities with the mere approval or acquiescence is not state action. And here, we don't even have knowledge alleged on the part of the municipality here. There's really nothing that even is remotely close to state action under, you know, a plethora of Ninth Circuit and Supreme Court cases. You know, it's absolutely clear that the city has to be involved in one way or another with the allegedly unconstitutional activities. After all, again, we're talking about actions which have to be themselves under color of state law. In Burton, there was no showing that the city of Wilmington, Delaware, was benefiting by keeping black persons out of the cafe, was there? I believe, Ron, affirmatively stated by the defendant in that case that that was in fact the case, that the restaurant's racially discriminatory policies were essential to its profitability, which in turn was essential to the parking authority's ability to have a successful ongoing enterprise. Nothing like that is even remotely present here. If the court has no further questions, I'm happy to submit. You may do that. And we'll hear now from Ms. Cushman. Thank you. Good afternoon, and may it please the court. My name is Dawn Cushman, and I represent the city of Pasadena. I'm going to do what I can to avoid repeating what my co-counsel has said, and I'll deal with questions that relate specifically to the city of Pasadena and that may have been raised in the reply that I can address. In particular, this was a summary of the case. It was based on the absence of evidence to show any involvement in this decision-making process by the Western Justice Center on the part of the city of Pasadena. And from a practical standpoint, plaintiff's entire argument is trying to seek to impose liability against the city of Pasadena without any evidence of showing a joint action or conspiracy or conduct that would meet the requirements of showing that the city of Pasadena had some control or impetus involved with the Western Justice Center. And along those lines, in order to qualify a 1983 lawsuit against the city, there has to be a Monell policy that shows that the policy was the quote moving force of inflicting the constitutional violation on the plaintiff. And so the entire focus of plaintiff looking at the, I guess, the financing, the structure that started the Western Justice Center is kind of off base. The focus needs to be whether there was control or delegation of authority by the city of Pasadena to the Western Justice Center. And again, the plaintiff seems to be arguing that there's the lease that doesn't say anything about anti-discrimination policies is the motivating factor. And that is kind of contrary to what the cases say. As Judge Graber noted with the Vincent case, that is one of the main statements that the policy has to be the moving force and that there has to be a direct causal link between the policy of the city and the constitutional deprivation. And that's out the city of Canton case that we've cited in our briefs. And so to me, there's no better explanation for the fallacy of plaintiff's arguments than Judge Teshima's remarks where he made a point of distinguishing between the delegation of authority by the city to the not fairly attributable to the city of Pasadena here. Judge Teshima noted that this was a transfer of a leasehold and under California law that takes the city out of it in terms of the rental of the property and therefore removes any liability. There is no any questions. I'll conclude my remarks. Council, wasn't there a lease involved in the Burton case also? There was, but there was more than that. And I don't think we have the more than that here. We don't have any symbiotic control. And in particular, our factual situation expressly eliminated the city's participation in like the, I think in Burton, we had the provision of repairs and gas and electricity. Our lease specifically says the landlord shall have no obligation in any manner whatsoever regarding the repairs. So we have the opposite of what presented in Burton. Thank you very much. Thank you, Council. And I believe you have some rebuttal time remaining. Thank you, Your Honor. As Western Justice Center concedes, the city had no control or oversight over after hours rental of the facility. That was a provision of the lease. And as the city concedes, a delegation of authority in that respect subjects it to Manel liability. So the city delegated to the Western Justice Center full authority to decide how to rent this property after hours. No controls by the city whatsoever. Now the city claims that it wants to rest on the fact that it didn't have any knowledge that the Western Justice Center would use that authority to discriminate. But that argument was disallowed completely by the U.S. Supreme Court in Burton. No state may effectively abdicate its responsibilities by either ignoring them or merely failing to discharge them. And it found that the state, the parking authority by its failure to include a non-discrimination clause, which the city included in other provisions of the lease, but not in the after hours rental provision, the failure to include that non-discrimination clause subjected to the state, the parking authority to joint liability with the cafe for the discrimination. There's no allegation in Burton that the state knew that the Eagle Cafe was in fact discriminating or that the state knew any of the operational details of the Eagle Cafe. Here, the council also brought up that in the Eagle Cafe case, the cafe said, well, we'll lose money if we don't hear the email from the head of the Western Justice Center says, we'll lose our ability to do dispute resolution if we allow Dr. Eastman to speak in our facility. It's going to blow our public reputation. We won't be able to fulfill our public purpose of running this dispute resolution center, which if you look at the lease in the excerpt of record runs through it, that is the entire public purpose of purchasing this property, refurbishing this property and allowing the Western Justice Center to operate this property for nearly a century. It was to have this public dispute resolution, noting that by moving a particular dispute resolution program already in existence at the time of the lease into the Western Justice Center, that they would be able to settle twice as many cases without the need to resort to litigation. The lease itself notes that it's controlled by a plan of public use for the property with very detailed uses that are permitted and what's not permitted on the property. This was all for the public purposes of the city of Pasadena and the private purposes of the Western Justice Center come together in this symbiotic relationship of joint participation. Under Burton and under Rawson and under Geneva Towers, the Western Justice Center is a state actor. With that, plaintiffs will submit unless there's a further question. I don't believe we have any additional questions, so the case just argued is submitted and we thank all three counsel for very interesting arguments and we appreciate your help to the court. With that, we are adjourned for this afternoon's session. Thank you, your honors. Thank you, your honor. Court for this session stands adjourned.
judges: Graber, Bea, Dorsey